# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2025-0561
Lower Tribunal No. 2023-CA-011245

_____

NATIONAL EQUITY RECOVERY SERVICES, INC.,

Appellant,

v.

AMERIFUND EQUITY GROUP, et al.,

Appellee.

_____

Appeal from the Circuit Court for Lee County.
Alane Laboda, Judge.

February 6, 2026

PER CURIAM.

Appellant, National Equity Recovery Services, Inc. ("NERS"), appeals several trial court orders precluding its ability to seek surplus funds from a foreclosure sale on a property owner's behalf, including one that denied an evidentiary hearing. We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A). The trial court's orders denied relief to NERS on two alternative grounds. First, NERS failed to appear at the properly noticed hearing that resolved entitlement to the surplus funds. Second, the property owner previously assigned her right to those

funds to Appellee, Amerifund Equity Group ("AEG"). We affirm because NERS failed to address the first basis for the trial court's rulings. *See Mirlalda v. Mitchell*, 423 So. 3d 951, 951 (Fla. 6th DCA 2025) (citing *Willens v. Willens*, 225 So. 3d 1017, 1018 (Fla. 1st DCA 2017) (Winsor, J., concurring) ("When a decision is based on more than one independent ground and the initial brief challenges only one, we must affirm.")).

AFFIRMED.

WOZNIAK, J., concurs.
TRAVER, C.J., concurs specially, with opinion.
PRATT, J., concurs specially, with opinion.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED
_____

TRAVER, C.J., concurring specially.

I concur in the majority's opinion, but I write separately to explain why the trial court erred when it failed to conduct an evidentiary hearing under section 45.032(3)(b), Florida Statutes (2024). This hearing would have determined whether AEG's assignment agreement complied with Florida law, or whether AEG acted in good faith in procuring this agreement from the property owner. Our record elicits skepticism on both fronts.

2

Kathleen Lauterbach owned a condominium in Fort Myers Beach, apparently free and clear of all liens. She died in 2020. Her daughter, Lisa M. Quinn, who lives in Illinois, became the personal representative of her estate, and later the condominium's owner. In 2023, the condominium association sued to foreclose a lien that secured unpaid assessments that had accrued since Lauterbach's death. The trial court later entered summary judgment in the association's favor and set a foreclosure sale. A third-party bidder won the property at auction. After satisfaction of the association's lien, nearly $225,000 in surplus funds remained. The trial clerk issued a certificate of disbursements for this amount.

AEG, NERS, and companies like them then repeatedly called Quinn. They offered to recover the surplus funds on her behalf in exchange for a percentage of the recovery. She first agreed to assign her recovery rights to AEG. The resulting assignment agreement entitled AEG to recover 12% of the surplus proceeds, plus up to 7.5% additional surplus for costs, expenses, research fees, and attorney's fees. NERS later informed her, though, that AEG's fee exceeded Florida's statutory limit. She thus tried to cancel her assignment with AEG and entered into a second assignment agreement with NERS.

Both AEG and NERS moved the court to disburse the surplus funds to them. AEG acted first. It set a hearing on its motion to disburse. It also moved to strike NERS's subsequent appearance, alleging that NERS was not a party to the case, and

3

it had been trying to steal AEG's clients. Just before the hearing, NERS moved the trial court to allow it to intervene, cancel the hearing, set an evidentiary hearing, and distribute the surplus funds to NERS.

AEG and Quinn appeared at the hearing; NERS did not. The trial court placed no one under oath nor received any evidence, most notably the AEG assignment agreement. Quinn said that she signed the agreement "in a panic" because of the approaching foreclosure auction, and that she only learned afterward that AEG's costs were "out of line" when "funds recovery companies [were] calling me like every ten minutes." AEG responded that it used a binding and "standard contract, which [it had] used all over the state for the last five years." It said Quinn had an obligation to read the agreement before signing, and she was bound by its terms.

The trial court granted AEG's motion to intervene and directed the trial clerk to disburse the surplus funds to AEG. It denied NERS's motions, finding that it had abandoned them by failing to appear. It alternatively concluded that NERS could not seek relief because AEG had entered into an assignment agreement with Quinn first. NERS did not move to vacate the trial court's orders under Florida Rule of Civil Procedure 1.540(b), and it offered no sworn explanation for its absence in its motion for rehearing. It did not address its absence in its initial brief, so I agree that we must affirm on this ground. *See Mirlalda v. Mitchell*, 423 So. 3d 951, 951 (Fla. 6th DCA 2025); *Fla. Virtual Sch. v. Calfee*, 50 Fla. L. Weekly D2522, D2524 (Fla.

4

6th DCA Nov. 26, 2025) (citing *Davis v. State*, 153 So. 3d 399, 401 (Fla. 1st DCA 2014) ("An appellant who presents no argument as to why a trial court's ruling is incorrect on an issue has abandoned the issue—essentially conceded that denial was correct.")).

But Florida law required the trial court to conduct an evidentiary hearing, and the trial court erred when it awarded AEG the surplus funds simply because Quinn entered into an assignment agreement with it first. In 2006, the Florida Legislature announced its intent "to abrogate the common law rule that surplus proceeds in a foreclosure case are the property of the owner of the property on the date of the foreclosure sale." *See* Ch. 2006-175, §§ 3, 9, Laws of Fla. (eff. July 1, 2006). Florida law now establishes "a rebuttable presumption that the owner of record of real property on the date of the filing of a lis pendens is the person entitled to surplus funds after payment of subordinate lienholders who have timely filed a claim." *See* § 45.033(1), Fla. Stat. (2024). If a person claims surplus proceeds as a property owner's assignee, they must rebut this presumption. *Id*. § 45.033(1), (2).

If the owner voluntarily assigns her right to recover surplus funds, the assignee may recover the funds provided the assignment meets statutory conditions. *Id*. § 45.033(2)(a), (3). Among other requirements, the assignment must be in writing, be timely filed, and disclose that an owner does not need an attorney or other representative to recover surplus funds in a foreclosure. *Id*. § 45.033(3)(a), (3)(a)2.,

5

(3)(b). An assignee's total compensation also cannot exceed 12% of the surplus. *Id.* § 45.033(3)(d).

If an assignee claims an interest in surplus funds before the trial clerk reports the surplus as unclaimed, "the court shall set an evidentiary hearing to determine entitlement to the surplus." *See* § 45.032(3)(b); *Nat'l Equity Recovery Servs., Inc. v. Williams*, 962 So. 2d 977, 979–80 (Fla. 3d DCA 2007) ("[A]s evidenced by the unambiguous language of the statute, during the 60–day period after the clerk issues a certificate of disbursements, a person claiming a right to surplus funds as an assignee is entitled to an evidentiary hearing to prove that entitlement."). If the trial court finds the assignment agreement complies with the statutory requirements, it must order the trial clerk to pay the assignee from the surplus. *See* § 45.033(4). If the trial court finds that the assignment noncompliant with statutory requirements, but concludes the assignee procured the assignment in good faith and with no intent to defraud the assignor, the trial court "may" pay the assignee's claim. *See id.* § 45.033(5). If the trial court sets aside the assignment, the owner of record is entitled to the surplus, subject to the assignee's right to seek repayment in a separate proceeding of any consideration it paid for the assignment. *See id.* § 45.033(6).

Based on section 45.032(3)(b)'s plain language, and irrespective of NERS's involvement, the trial court should have conducted an evidentiary hearing on AEG's motion to intervene and disburse. Even if the trial court were unaware of its statutory

6

obligation to conduct an evidentiary hearing on AEG's claim, NERS's competing claim—made with an express demand for an evidentiary hearing alongside supporting statutory authority—should have illuminated the need. *See Nat'l Equity Recovery Servs., Inc. v. Imperial Fund Tr. 2019-I*, 361 So. 3d 876, 880 (Fla. 4th DCA 2023) ("Based on section 45.032(3)(b), the trial court was required to hold an evidentiary hearing on the competing motions to release the surplus funds.").

The trial court's conclusion that AEG was entitled to the surplus simply because Quinn assigned her rights to it first does not reflect the Legislature's clear intent for trial courts to undertake a more critical analysis of the agreement that supported AEG's demand. This analysis would have addressed troubling questions because AEG's agreement did not inform Quinn that she did not need an attorney or other representative "to recover surplus funds in a foreclosure."[1] *See* § 45.033(3)(a)2. And it appears that AEG's compensation may exceed the 12% legislative cap, because the assignment allows it to recover up to another 7.5% in costs, expenses, research fees, and attorney's fees.

Further, AEG's argument that because Quinn signed the agreement, she was bound to its terms without recourse, reflects a clear subversion of its basic statutory obligations. At minimum, counsel should have known better. Resultingly, Quinn

---

[1] The Legislature has provided an acceptable form for an owner of record to recover surplus funds without help from companies like AEG and NERS. *See* § 45.032(3)(a).

may suffer by her obligations under a questionable assignment that could erode her just recovery following the foreclosure and sale of her dead mother's condominium.

Nothing we say today stops Quinn from taking whatever legal action the law might allow to force AEG to honor its statutory obligations. Alternatively, I hope this concurrence will motivate AEG to do right by her. I also hope that it will remind AEG and companies like it of both their statutory obligations and their duty of candor to trial courts in this context.

_____

PRATT, J., concurring specially.

I fully concur in the majority's opinion. Although we must affirm this appeal in light of the arguments presented, I acknowledge that "[t]he Florida Legislature has enacted comprehensive laws governing surplus funds after judicial sales of property." *Rapid Surplus Recovery LLC v. Se. Prop. Acquisitions LLC*, 420 So. 3d 1151, 1151 n.* (Fla. 1st DCA 2025); *see generally* §§ 45.031, 45.032, 45.033, Fla Stat. (2024). I further acknowledge that the plain language of section 45.032(3)(b) requires an evidentiary hearing and the consideration of certain statutory factors under the circumstances identified in the statute. *See* § 45.032(3)(b), Fla. Stat. ("If any person other than the owner of record claims an interest in the proceeds prior to the date that the clerk reports the surplus as unclaimed or if the owner of record files a claim for the surplus but acknowledges that one or more other persons may be

8

entitled to part or all of the surplus, *the court shall set an evidentiary hearing* to determine entitlement to the surplus. At the evidentiary hearing, an equity assignee has the burden of proving that he or she is entitled to some or all of the surplus funds. *. . . The court shall consider the factors in s[ection] 45.033* when hearing a claim that any person other than a subordinate lienholder or the owner of record is entitled to the surplus funds." (emphasis added)); *see also Nat'l Equity Recovery Servs., Inc. v. Imperial Fund Tr. 2019-I*, 361 So. 3d 876, 880 (Fla. 4th DCA 2023) ("Courts are not free to deviate from the clear statutory process set forth for the distribution of surplus foreclosure proceeds which is governed by a plain and unambiguous statutory procedure." (citation, internal quotation marks, and brackets omitted)).

_____

Thomas J. Butler, of Thomas Butler, P.A., Miami Beach, for Appellant.

Kevin J. Loftus, of The Loftus Firm, LLC, Jacksonville, for Appellee, Amerifund Equity Group.

No Appearance for Other Appellees.